# The State *v.* Mills & Breitling.

### *Action on Bond.*

1. *Art. IV. § 32 of Constitution ; what does not apply to.* — The thirty-second section of Art. IV. of the state Constitution is not restrictive of the power of the general assembly to compound, release, or discharge debts due the State. This power is the same over all debts no matter how originating, and must of necessity reside in some department of the government. Under the Constitution there is no other repository of the power than the general assembly.

2. *Act compounding debt due the State ; what not essential to validity of.* — It is not essential to the validity of an act compounding or releasing a debt due the State that it be passed by a vote of two thirds of the members of each house.

3. *Art. IV. § 32 of the Constitution ; to what applies.* — Art. IV. § 32 of the Constitution has no application to dealings between the State and its officials and employees, charged with the collection, keeping, or disbursement of its revenue. It should be so construed so as to prevent the general assembly from effecting in an indirect manner the things conditionally prohibited in that section — as by a loan by a two thirds vote, and a subsequent release of the debt thereby created in favor of the State, by a majority vote. (Per MANNING, J., concurring.)

APPEAL from Circuit Court of Marengo.

Tried before Hon. LUTHER R. SMITH.

The facts are sufficiently stated in the opinion.

W. H. and R. E. CLARKE, for appellant. — This act is the " giving away " of money due the State without complying with the Constitution. What cannot be directly done is forbidden to be done by indirection. *Haley* v. *Clark*, 26 Ala. 439. If this act be valid the Constitution can always be violated with impunity. Two thirds of the members of each house may make a loan which is well secured, and a majority afterwards release the debt. This is as effectually giving away the money of the State by a majority vote, as if it had been done or attempted by a direct vote for that purpose, in the first instance.

EUGENE MCCAA, *contra.* — This act is not within the mis-

chief to be prevented. Ever since Alabama has had a legislature, it has uniformly exercised this power of granting relief to debtors, whenever from motives of justice or policy it was deemed advisable. Some department of government in every civilized community must have the power to release debts. This uniform practice shows the construction which should be put upon the act. Smith's Commentaries on Stat. & Con. Law, p. 436.

BRICKELL, C. J. — The intestate of the appellees, Gottlieb Breitling, was a surety on a bond executed by the "Marengo Plank or Covered Road Company," payable to the governor of the State, for a part of the two per cent. fund loaned to the company under an act of the general assembly. After the commencement of this suit, the general assembly passed an act entitled "An act for the relief of A. M. Mills and F. S. Breitling, administrators with the will annexed of Gottlieb Breitling, deceased, late of Marengo county," approved December 6, 1871, whereby they are "released from all claims or obligations to the State of Alabama, for and on account of that portion of the two per cent. fund loaned to the Marengo Plank or Covered Road Company, by Henry W. Collier, Governor of the State of Alabama, under and by virtue of the act of the 9th of February, 1850." Pamph. Acts 1871–2, p. 158. As a full release from liability on the bond, this statute was by appellees pleaded *puis darrein continuance*, in bar of the suit. The plea was demurred to, and the causes of demurrer resolve themselves into a denial of the constitutionality of the act. The question was, however, more fully presented on the evidence, it appearing the act was not passed with the concurrence of two thirds of the members of each house, on votes taken by yeas and nays, and entered on the journals. The constitutional provision, supposed to be offended in the passage of the act, is the 32d section of the 4th article, and reads as follows : " The general assembly shall not borrow or raise money on the credit of this State, except for purposes of military defence against actual or threatened invasion, rebellion, or insurrection, without the concurrence of two thirds of the members of each house ; nor shall the debts or liabilities of any corporation, person or persons, or other States be guaranteed, nor any money, credit, or other thing be loaned or given away, except by a like concurrence of each house ; and the votes shall, in each case, be taken by the yeas and nays, and be entered on the journals." The release of the debt created by the bond, it is argued, is the giving away of a credit or other thing, which can only be done in the manner pointed out, — by the concurrence of two thirds of the mem-

bers of each house, voting by yeas and nays entered on the journals.

The capacity of contracting, of incurring liabilities, and of having debts and liabilities incurred to it, is an incident to the general sovereignty of the State. The government cannot be conducted without revenue. This must be collected, kept, and disbursed. In the collection, safe keeping, and disbursement, the agency of officers is indispensable. Guarantees for their fidelity must be taken. These guarantees will sometimes be broken, and thereby a debt or liability to the State will be created. The general assembly has full legislative power over the public revenue, unless restrained and limited by the Constitution. Debts due the State they may compound, release, or discharge, on such terms and in such manner as it may seem to them the public good requires. This power they exercise at nearly every session, by compounding, releasing, or discharging the liabilities of public officers and their sureties, for defaults in the collection or safe keeping of the public revenue. It is a highly beneficial power to the State and to the individual citizen. A default in the safe keeping, collection, or disbursement of the public moneys may not have been wilful, but attended by such circumstances as render it eminently just that the State should not stand on the letter of the bond, and demand full reimbursement ; or it may have been wilful, and the precarious condition of the debtor and his sureties may require that a compromise should be made rather than incur the risk of losing all, at the termination of litigation for its recovery ; or facts may exist rendering the right of recovery doubtful. A restraint or limitation of the legislative power over the debts due the State arising from defaults of officials charged with duties in reference to the public revenue would be unwise, and could produce only injury to the State. No such restraint or limitation has been supposed to exist, nor is any imposed by the section of the Constitution to which we have referred.

The power the general assembly may exercise over debts or liabilities arising from defaults in the collection, keeping, or disbursement of the public revenue, may be exercised over every public debt in which the State has the beneficial ownership, no matter how it originates, or on what consideration based. The power of necessity resides somewhere, and there is under the Constitution no other repository of it. The two per cent. fund is a trust fund, because the act of Congress donating it, and the act of the legislature accepting it, devote it unconditionally and absolutely to a specific purpose — the internal improvements particularly mentioned. The State is, nevertheless, the trustee and cestui que trust of the fund,

charged in conscience with its faithful application. While the fund is in the keeping of the State, and its appropriation not practicable, commingling it with the State's other funds is not a conversion, nor a loan of it would not be a breach of the confidence reposed in the State. If considerations arise which the general assembly deem sufficient to justify it, why should not the borrower be released from his obligation to pay? The duty of the State to devote the entire fund received to the specific purposes to which it is appropriated is not diminished. The State can claim no exemption from the duty because it has not collected the money loaned. The State is a trustee of the sixteenth section granted by Congress, for the use of schools. But the State is a mere trustee, holding only the legal title in trust for the inhabitants of the several townships in which the lands are situate. The inhabitants of the township, not the State, are the *cestuis que trust. Long* v. *Brown*, 4 Ala. 622. Hence it was held in *Hardy* v. *Br. Bank Montgomery* (15 Ala. 722), that the legislature could not by mere enactment rescind or annul a contract for the sale of the sixteenth section, without the assent of the inhabitants of the township, or a majority of them. The difference between that case and the present is manifest. The State is trustee and *cestui que trust* of the two per cent. fund, and bound to its faithful application to a specific purpose. A loan of it may not be a conversion, nor will a release of the borrower from liability diminish the fund, or lessen the obligation resting on the State. A release of the purchaser of the sixteenth section from his obligation to pay the purchase-money would diminish the fund, in which the inhabitants of the township have the sole beneficial interest. The power of the legislature, unless restrained and limited by the clause of the Constitution referred to, was ample to release the appellants from liability on the bond. No injury results from the release, other than that which results whenever a debt arising from a default in the collection, safe-keeping, or disbursement of the public revenue is released — a diminution of the resources of the State to meet its liabilities.

With the power of the general assembly over debts due the State the section of the Constitution under consideration was not designed to interfere. It was intended primarily to impose a check or restraint on the power of the general assembly to contract debts or liabilities direct or indirect in the name of and obligatory on the State. It next proposed to restrain the power of the general assembly to loan or give away the moneys, credits, or other things of the State. The evil to be avoided was the incurring of debts and liabilities in the name of and on the credit of the State. These had been incurred in

[State v. Mills.]

times past for banking. It had been often proposed they should be incurred to aid various schemes of internal improvements. It had been proposed to guarantee the liabilities and debts of corporations, engaged in such schemes, and sometimes to loan, or give them money, or credits of the State   While the general assembly is not prohibited from exercising full power in this respect, the exercise must be with the concurrence of two thirds of each house, voting in the manner prescribed.   Thereby greater care, and greater responsibility in the representative in the exercise of the power is secured.   The release of a debt due the State is not within the mischief to be guarded against. It is not a loan or a gift.   It is the mere waiver or abandonment of a right or claim, or the discharge of a cause of action. The constitutional provision may operate on mere donations of money, credit, or other thing of the State.   A release, though it may be voluntary, is in effect a contract.   It is always supported by, or in legal contemplation has a consideration ; when made by an individual, after breach of a contract, it must be under seal, and the seal imports the consideration. 2 Chitty on Con. 1145.   An act of the general assembly releasing a debt due the State is the most solemn form a release of such debt could assume, and must have the legal efficacy attached to a release under seal, executed by an individual. Against contracting debts, or loans, or gifts, the constitutional provision is expressly directed.   A release of a debt due the State cannot be construed into either.   It is different in its nature and character, and has in common language, and legal signification, nothing in common with either.   The judgment of the circuit court is affirmed.

MANNING, J. — I concur in the conclusion and judgment announced by the Chief Justice.   The liability to which the act of the general assembly pleaded in this cause relates• is an old one, arising out of a transaction that took place many years ago, long before the Constitution of 1867–8 was framed.   At that time it was a mere claim against the estates of deceased persons, and, perhaps, against a few living individuals who had been sureties for the defunct corporation, for whose benefit a loan of a small amount of the two per cent. fund had been made by the State.   I am of opinion that this claim was not within the inhibition and restrictions of § 32 of Article IV. of the Constitution of 1867–8.

That section, however, or the part thereof in these words, " Nor shall the debts or liabilities of any corporation, person or persons, or other States, be guaranteed, nor any money, credit, or other thing be loaned or given away, except by a like concurrence of each house," ought to be so construed as to pre-

vent the accomplishment of any of the things thereby conditionally prohibited, —indirectly, or by two separate acts of the general assembly; as for instance a loan by a two thirds vote, and a release of it afterwards by a mere majority vote, as well as directly, by a single act passed by a mere majority.

The section referred to does not relate to dealings between the State and its official employees, such as tax-collectors and other agents. It was intended to hinder the legislature from being easily persuaded by plausible schemes of internal improvement or public benefit, or inconsiderately urged by influences temporarily potent from alienating or intrusting. to individuals or corporations the revenues or credit of the State.